

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-12-00559-CR**

WILLIAM EUGENE FOX, JR.                                              APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

## FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

The trial court found Appellant William Eugene Fox Jr., a former Fort Worth deputy city marshal, guilty of official oppression and sentenced him to ninety days' confinement, probated for one year. Appellant brings a single issue on appeal, challenging the sufficiency of the evidence to support his conviction.

---

[1]*See* Tex. R. App. P. 47.4.

Because the evidence is sufficient to support Appellant's conviction, we affirm the trial court's judgment.

**Statement of Facts**

Anthony Brown testified that on March 23, 2010, he went to a city park in his ATV. The park, which was a golf course at one time, did not have a sign indicating that it is a park. Brown stated that he went to the park to look for antlers that had been shed by deer. He testified that among the antlers that he found that day were two large antlers that appeared to be a matching set. Brown testified that as he was holding the antlers, Appellant and another deputy marshal, George Tom Wood, drove up in a truck with its emergency lights flashing. Brown testified that he put the antlers on the front rack of his ATV.

Brown testified that the deputies asked him what he was doing there, and he told them that he was picking up antlers. Appellant told Brown that he was not supposed to have an ATV in the park. When Brown turned around to look at his ATV, he saw that Wood had the large antlers in his hand.

Wood told Brown that it was illegal to pick up antlers on private property. Brown responded that because the antlers were in a park, he believed that he could collect them. Wood told him that the nature center next door would want the antlers to study.

Appellant and Wood took Brown's driver's license and the antlers to their truck. A few minutes later, the deputies returned without the antlers and asked Brown how he would get the ATV home because it was illegal to drive it on the

2

street.  Appellant and Wood told Brown that they could write him several tickets but had decided not to.

Appellant and Wood turned to go back to their truck.  Brown testified that he followed them, asking about the antlers.  Brown testified that Wood told him that they would keep the antlers, mentioning the nature center again and also stating that the game warden would be interested in them and that there was a park ordinance against picking them up.  Brown testified that he stood by the open truck door to keep Wood from closing the door and asked for the antlers back.  Appellant told Brown to step away from the door and that they were doing him a favor by not writing him a ticket.  Brown asked to be allowed to take a picture with the antlers.  Wood agreed to use Brown's phone to take a picture of Brown holding the antlers.

Appellant testified that when he saw the large antlers and picked one up, they were on the ground and three feet away from the ATV.

That afternoon, Appellant and Wood, each holding an antler, went into Sergeant Mike Martinez's office at the city marshal's office.  Martinez asked them where the antlers had come from, and the deputies told him that they had found them at the park and that they had detained someone there.  Specifically, Wood told Martinez that they had detained a man at the park riding an ATV.  Appellant and Wood both testified that Martinez told them that they should have collected all the antlers that Brown had picked up.  Appellant and Wood also both testified that Martinez told Appellant to take the antlers home.  Martinez testified that

3

Appellant and Wood had told him that they had found the antlers and that he did not remember the conversation in which he allegedly had told them that they should have taken all the antlers that Brown had collected. When Appellant left for the day, he took the antlers home.

The next day, Brown reported the incident to Martinez, whom he knew. Martinez determined that Brown might be referring to Appellant and Wood, told Brown that he would need to consult with his chain of command, and reported the matter to his boss.

Jesus Hernandez, also with the city marshal's office, conducted an administrative investigation. He referred the matter to the Fort Worth Police Department for a possible criminal investigation, which resulted in charges of official oppression being brought against both Wood and Appellant.

Appellant and Wood were tried together before a jury, but the jury was discharged after receiving the charge because "prohibited testimony was presented." Trial then proceeded before the trial court, who convicted Appellant and Wood and gave them identical sentences.

Ray Miller, a peace officer for the Hood County Sheriff's Department who also has a taxidermy business, testified for the defense. He stated that in March 2010, he had run into Appellant, who asked him about having some antlers he had recovered mounted for the marshal's office to use for display and educational purposes.

4

Appellant testified that when he approached Brown's ATV, he saw two antlers on the ground near the ATV. He picked one up, and Wood picked up the other one. Appellant stated that Brown asked about the antlers, and Wood told him that they would be taking them to the office. Brown asked for a picture, and Wood complied. Appellant stated that he never saw the antlers in Brown's hands and never saw them on the ATV.

**Sufficiency of the Evidence**

In his sole issue, Appellant contends that the evidence is insufficient to support his conviction. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3]

---

[2]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

[3]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence.[4] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[5] Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[6] We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[7]

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.[8] In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the

---

[4] *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Wise*, 364 S.W.3d at 903.

[5] *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

[6] *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011).

[7] *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903.

[8] *Isassi*, 330 S.W.3d at 638; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution."[9]

Section 39.03(a)(1) of the penal code provides that a public servant commits official oppression if, "acting under color of his office or employment . . . he . . . intentionally subjects another to . . . seizure [or] dispossession . . . that he knows is unlawful."[10]

Appellant argues that the evidence is insufficient because it does not show that Brown was actually in possession of the antlers. Appellant testified that the large antlers were lying on the ground in tall grass, three feet away from Brown's ATV when Appellant first saw them. The record taken in the most favorable light, however, shows that Appellant and Wood saw Brown standing near his ATV in possession of the antlers. There was also evidence that Brown set the antlers on his ATV. Further, Brown testified that he had told Appellant that he had found the antlers. Finally, Brown's testimony demonstrates that he asserted his right to the antlers by attempting to stop the two deputies from taking them.

After taking the antlers from Brown, Appellant and Wood returned to work, each carrying one of the antlers. The deputies told Martinez that they had found the antlers, not, according to Martinez, that they had taken them from Brown. Appellant took the antlers home with him. According to Appellant and Wood,

_____

[9]*Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

[10]Tex. Penal Code Ann. § 39.03 (West Supp. 2013).

Martinez gave Appellant permission to do so. Martinez did not recall such a conversation but did not initially have a problem with Appellant taking the antlers home because he had been led to believe by Appellant and Wood that they, not Brown, had found the antlers. Applying the appropriate standard of review, we hold that there is sufficient evidence from which the trial court could conclude that Brown possessed the antlers.

Appellant also argues that there is no evidence that he knew taking the antlers from Brown was illegal. The State, however, points to the following evidence to support the trial court's conclusion that Appellant knew taking the antlers from Brown was illegal:

- Appellant was a 23-year veteran law enforcement officer;

- The deputies took only the two large antlers, and not the other antlers Brown possessed;

- Appellant did not document the seizure of the antlers from Brown;

- Appellant told his sergeant that he had found the antlers;[11]

- Appellant did not log the antlers as seized evidence or city property; and

- Although Appellant testified that had Brown simply claimed the antlers, Appellant would not have seized them because "[he] wouldn't want to deprive anybody of [his] property," Brown testified that he did claim the antlers.

---

[11]*See King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (holding that making false statements indicated consciousness of guilt and an attempt to cover up the crime).

By his own statement, Appellant knew that it was wrong to "deprive anybody of [his] property."

Viewing the record in its entirety, we hold that the evidence is sufficient to support the trial court's implicit determination that the evidence proves beyond a reasonable doubt that Appellant took the antlers from Brown and that Appellant knew that taking the antlers from Brown was unlawful. We therefore overrule Appellant's sole issue on appeal and affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, MCCOY, and GABRIEL, JJ.

GABRIEL, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 23, 2014